UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

PETER LEBLANC,                          :
              Plaintiff,                :
                                        :
        v.                              :       CA 11-101 M
                                        :
STATE OF RHODE ISLAND and               :
ASHBEL T. WALL,[1]                      :
              Defendants.               :


**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

        Before the Court are four motions:

        (1) a Motion to Dismiss (Docket ("Dkt.") #13) pursuant to
Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6) filed
by Defendant State of Rhode Island (the "State");

        (2) a Motion to Join and Support the State of Rhode Island's
Motion to Dismiss (Dkt. #17) ("Motion to Join") filed by Defendant
Ashbel T. Wall ("Director Wall"), Director of the Rhode Island
Department of Corrections ("RIDOC").

        (3) a Motion for Injunctive Relief (Dkt. #19) ("Motion for
Injunction") filed by Plaintiff Peter LeBlanc ("Plaintiff" or

---

[1] Plaintiff's original complaint (Dkt. #1) was entitled "PETER
LEBLANC v. STATE OF RHODE ISLAND ET AL[,] ASHBEL T. WALL DIRECTOR RIDOC
ET AL." His Amended Complaint (Dkt. #5) is entitled "PETER LEBLANC v.
ASHBEL T. WALL, ET AL." As the only defendant identified in the Amended
Complaint is the "RIDOC" (Rhode Island Department of Corrections), see
Amended Complaint at 3, the Court in the interest of inclusiveness
captions this Report and Recommendation as above because it addresses
motions filed by Plaintiff, the State of Rhode Island (the "State"), and
Ashbel T. Wall ("Director Wall").

"LeBlanc"); and

(4) an Amended Petition for Injunctive Relief (Dkt. #29) ("Amended Motion for Injunction") also filed by Plaintiff. The Court refers to the above collectively as the "Motions."

The Motions have been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) for preliminary review, findings, and recommended disposition. A hearing was conducted on three of the Motions on August 22, 2011.[2] After reviewing the filings, listening to oral argument, and performing independent research, I recommend that the Motion to Dismiss and Motion to Join be granted and that the Motion for Injunction and Amended Motion for Injunction be denied.

## I.  Facts and Travel

On March 14, 2011, Plaintiff filed a Complaint in this Court pursuant to 42 U.S.C. § 1983 alleging various violations of his rights by the State and the RIDOC. See Complaint (Dkt. #1). Attached to the Complaint was a Memorandum in Support of 42 USC [§] 1983 Civil Action. See id. Plaintiff also filed on that date a Motion to Proceed in Forma-Pauperis (Dkt. #2) ("Motion to Proceed IFP") and an accompanying Application to Proceed without Prepayment of Fees and Affidavit (Dkt. #3) ("Application"). The Motion to Proceed IFP was subsequently referred to this Magistrate Judge for determination.

---

[2] The Amended Motion for Injunction was filed subsequent to the August 22, 2011, hearing. However, the Court has determined that no additional hearing is necessary.

The Court on April 29, 2011, issued an Order Directing Plaintiff to File an Amended Complaint (Dkt. #4) ("Order of 4/29/11"). The Order of 4/29/11 stated that "it is clear that many of the claims which Plaintiff asserts in the Complaint (and describes in the Memorandum) are challenges to the legality or duration of his confinement," Order of 4/29/11 at 1 (citing examples), which "are not cognizable in a § 1983 action," id. at 2 (citing cases). The Court directed Plaintiff to file an amended complaint which:

> 1.  shall not contain any claims which this Order has identified as not cognizable in an action brought pursuant to 42 U.S.C. § 1983, that is, any claims which call into question the duration or legality of Plaintiff's confinement;
>
> 2.  may contain claims which challenge the conditions of Plaintiff's confinement, for example, lack of medical treatment, interference with legal mail, disposing of Plaintiff's personal property, etc.;
>
> 3.  shall bear the heading "First Amended Complaint;"
>
> 4.  shall set forth the allegations in numbered paragraphs; and
>
> 5.  shall include a statement of the relief which Plaintiff seeks.

Id. at 4-5.

Plaintiff filed his Amended Complaint (Dkt. #5) ("First Amended Complaint") on May 5, 2011. In the First Amended Complaint, Plaintiff appears to allege that: he has been subjected to unspecified equal protection violations and unspecified cruel

and unusual punishments, see First Amended Complaint ¶ 6;[3] he has been denied medical and dental treatment consistent with an order issued by the Providence County Superior Court on December 9, 2005, see id. ¶ 9; his legal mail has been tampered with, see id. ¶ 10; and his medical alert bracelet has been confiscated and presumably destroyed, see id. ¶ 11.  Plaintiff seeks an order directing the RIDOC and Director Wall to produce clear and concise copies of: (1) all institutional infractions, appeals, answers, and transcripts of tapes of any and all relevant hearings as well as access to tapes of such hearings; (2) all of his medical records from August 1995 to the present; and (3) his six-part inmate folder from ID and records including institutional grievances.  Id. ¶ 7.  Plaintiff also requests that the State provide "certain parts of the record," id. ¶ 5, presumably transcripts.  Plaintiff additionally states that he "reserves the right to state relief until such time as he is able to demonstrate completely all possible claims pending receipt of the requested materials in Paragraph (7) above."  Id. ¶ 8.

The Court subsequently granted the Motion to Proceed IFP.  Thereafter, Plaintiff filed on May 17, 2011, a memorandum entitled Supplemental Memorandum Petition for 42 USC § 1983 Action (Dkt. #8)

---

[3] According to Plaintiff, these alleged violations are demonstrated in a memorandum filed by his appointed counsel in support of a post-conviction application seeking relief from a prior sentence in state court.  See First Amended Complaint ¶ 6.  However, said violations are not described in the First Amended Complaint.  See generally id.

4

("Plaintiff's First Supp. Mem.") and on June 29, 2011, a second memorandum entitled Plaintiff['s] Supplemental Memorandum in Support of §1983 Action (Dkt. #11) ("Plaintiff's Second Supp. Mem.").

On July 1, 2011, the State filed the instant Motion to Dismiss. Plaintiff on July 12, 2011, filed his Objection to State's Motion to Dismiss (Dkt. #15) ("Objection to Motion to Dismiss"). Director Wall filed the Motion to Join on July 13, 2011. Thereafter, Plaintiff filed the Motion for Injunction. On August 11, 2011, the State and Director Wall filed Defendants' Objection to Plaintiff's Motion for an Injunction (Dkt. #20) ("Objection to Motion for Injunction"). Plaintiff filed yet another Supplemental Memorandum (Dkt. #21) ("Plaintiff's Third Supp. Mem.") on August 15, 2011.

On August 22, 2011, the Court conducted a hearing on the above. Subsequent to the hearing, Plaintiff filed the Amended Motion for Injunction, to which the State and Director Wall filed Defendants' Objection to Plaintiff's Amended Petition for an Injunction (Dkt. #31) ("Objection to Amended Motion for Injunction") on October 13, 2011.

## II. Law

### A. Pro Se Status

Plaintiff is proceeding *pro se*, and his Complaint is held to a less stringent standard than one drafted by a lawyer. See Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594 (1972). It is to be

5

"read ... with an extra degree of solicitude." Rodi v. Ventetuolo, 941 F.2d 22, 23 (1st Cir. 1991); see also United States v. Genao, 281 F.3d 305, 313 (1st Cir. 2002)("[C]ourts should read pro se complaints less strictly than lawyer-drafted pleadings"). The Court is required to liberally construe a pro se complaint. See Strahan v. Coxe, 127 F.3d 155, 158 n.1 (1st Cir. 1997); Watson v. Caton, 984 F.2d 537, 539 (1st Cir. 1993). At the same time, a plaintiff's pro se status does not excuse him from complying with procedural rules. See Instituto de Educacion Universal Corp. v. U.S. Dep't of Educ., 209 F.3d 18, 24 n.4 (1st Cir. 2000).

The First Circuit summarized the above law in Dutil v. Murphy, 550 F.3d 154 (1st Cir. 2008). "[A]s a general rule, we are solicitous of the obstacles that pro se litigants face, and while such litigants are not exempt from procedural rules, we hold pro se pleadings to less demanding standards than those drafted by lawyers and endeavor, within reasonable limits, to guard against the loss of pro se claims due to technical defects." Id. at 158 (citing Boivin v. Black, 225 F.3d 36, 43 (1st Cir. 2000)(citing Haines, 404 U.S. at 520); Instituto de Educacion Universal Corp., 209 F.3d at 23)).

## B. Rule 12(b)(6) Standard

In order to survive a motion to dismiss a complaint must allege 'a plausible entitlement to relief.'" ACA Fin. Guar. Corp. v. Advest, Inc., 512 F.3d 46, 58 (1st Cir. 2008)(quoting Bell Atl.

Corp. v. Twombly, 550 U.S. 544, 559, 127 S.Ct. 1955 (2007)).  This
pleading standard applies to all civil actions.  Ashcroft v. Iqbal,
556 U.S. ___, 129 S.Ct. 1937, 1953 (2009).

Under Fed. R. Civ. P. 8(a)(2), a pleading must contain a
"short and plain statement of the claim showing that the pleader is
entitled to relief."  Iqbal, 129 S.Ct. at 1949 (quoting Fed. R.
Civ. P. 8(a)(2)).  "[T]he pleading standard Rule 8 announces does
not require 'detailed factual allegations,' but it demands more
than an unadorned, the-defendant-unlawfully-harmed-me accusation."
Id. (quoting Twombly, 550 U.S. at 555)(alteration in original).  A
pleading that offers "labels and conclusions" or "a formulaic
recitation of the elements of a cause of action will not do."  Id.
(citing Twombly, 550 U.S. at 555).  Nor does a complaint suffice if
it tenders "naked assertion[s]" devoid of "further factual
enhancement."  Id. (citing Twombly, 550 U.S. at 557).

To survive a motion to dismiss, a complaint must contain
sufficient factual matter, accepted as true, to "state a claim to
relief that is plausible on its face."  Id. (citing Twombly, 550
U.S. at 570); see also Sepúlveda-Villarini v. Dep't of Educ. of
Puerto Rico, 628 F.3d 25, 29 (1st Cir. 2010)("The make-or-break
standard ... is that the combined allegations, taken as true, must
state a plausible, not a merely conceivable, case for relief.")
(citing Iqbal, 129 S.Ct. at 1950-51).  A claim has facial
plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. (citing Iqbal, 129 S.Ct. at 1949). The plausibility standard is not akin to a "probability requirement," id., but it asks for more than a sheer possibility that a defendant has acted unlawfully, id. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. at 557).

In Iqbal, the Supreme Court explained that two working principles underlay its decision in Twombly. Id. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Id. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Id. (citing Twombly, 550 U.S. at 555). Thus, although for the purposes of a motion to dismiss a court must take all of the factual allegations in the complaint as true, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. at 1949-50. While Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Id. at 1950. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.

Id. (citing Twombly, 550 U.S. at 556). Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. Id. Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"— "that the pleader is entitled to relief." Id. (quoting Fed. R. Civ. P. 8(a)(2))(alteration in original). At the same time, "Twombly cautioned against thinking of plausibility as a standard of likely success on the merits; the standard is plausibility assuming the pleaded facts to be true and read in a plaintiff's favor." Sepúlveda-Villarini, 628 F.3d at 30.

A court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. Iqbal, 129 S.Ct. at 1950. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. Id. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. Id. The Iqbal court cited its analysis in Twombly as illustrative of this "two-pronged approach." Id.

C. Standard for Injunctive Relief

Plaintiff, as the moving party, has the burden of persuasion

9

to demonstrate by a clear showing: (1) that he has a substantial likelihood of success on the merits; (2) that he faces a significant risk of irreparable harm if the injunction is denied; (3) that the harm he will suffer outweighs any harm to defendants if the injunction is granted; and (4) that the granting of prompt injunctive relief will promote (or, at least, not denigrate) the public interest. McGuire v. Reilly, 260 F.3d 36, 42 (1st Cir. 2001); see also Mazurek v. Armstrong, 520 U.S. 968, 972, 117 S.Ct. 1865 (1997)(requiring preliminary injunction movant to carry the burden of persuasion "*by a clear showing*"). Of the four factors, the likelihood of success on the merits is of primary importance. See Esso Standard Oil Co. (Puerto Rico) v. Monroig-Zayas, 445 F.3d 13, 18 (1st Cir. 2006)("The sine qua non of this four-part inquiry is likelihood of success on the merits; if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity."); see also Wine & Spirits Retailers, Inc. v. Rhode Island, 418 F.3d 36, 46 (1st Cir. 2005).

**III. Discussion**

    **A.   Motion to Dismiss**

The State contends that the First Amended Complaint should be dismissed because: (1) Plaintiff has failed to exhaust his administrative remedies under the RIDOC Inmate Grievance Policy and Procedure ("Grievance Policy"); (2) Plaintiff has failed to comply

with Fed. R. Civ. P. 8; and (3) the State is not a person within the meaning of § 1983. Memorandum of Law in Support of Motion to Dismiss ("State's Mem. re Motion to Dismiss") at 1. The Court addresses each of the State's arguments in the context of Plaintiff's claims.

To the extent that Plaintiff alleges he has been subjected to unspecified equal protection violations and cruel and unusual punishments, see First Amended Complaint ¶ 6 (noting that a memorandum submitted in support of a state post-conviction application by appointed counsel "demonstrate[s] both equal protection[] violations, as well as infliction of cruel and unusual punishments[]"), such claim clearly fails to satisfy the requirements of Fed. R. Civ. P. 8(a).

Rule 8(a) provides that:

A pleading that states a claim for relief must contain:

> (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
>
> (2) **a short and plain statement of the claim showing that the pleader is entitled to relief**; and
>
> (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Fed. R. Civ. P. 8(a) (bold added). The First Circuit has stated that a plaintiff's complaint "should at least set forth minimal facts as to who did what to whom, when, where, and why ...."

Educadores Puertorriqueños en Acción v. Hernández, 367 F.3d 61, 68
(1st Cir. 2004); see also Maldonado v. Fontanes, 568 F.3d 263, 266
(1st Cir. 2009)(noting that court "need not accept as true legal
conclusions from the complaint or '"naked assertion[s]" devoid of
"further factual enhancement"'")(quoting Iqbal, 129 S.Ct. at 1960
(alteration in original)(quoting Twombly, 550 U.S. at 557)).  The
First Amended Complaint contains none of the above.  No factual
allegations regarding who committed what violations and when are
offered in support of this claim in the First Amended Complaint.
Rather, it references a document submitted in a different
proceeding to a different court.  Accordingly, the Court finds that
Plaintiff's first claim fails to meet the requirements of Rule 8(a)
in that it fails to "give the defendant[s] fair notice of what the
plaintiff's claim is and the grounds upon which it rests."
Educadores Puertorriqueños en Acción, 367 F.3d at 66 (quoting
Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99 (1957)).

The same can be said for Plaintiff's claims regarding
inadequate medical care, interference with his legal mail, and
confiscation of his medical alert bracelet.  See First Amended
Complaint ¶¶ 9-11.  Plaintiff alleges that the RIDOC has failed to
provide medical and dental treatment and provide Plaintiff with an
inmate care package consistent with a December 9, 2005, order of
the Providence County Superior Court.  Id. ¶ 9.  Specifically,
Plaintiff states that "the order addressed a significant issue, the

12

treatment protocol for Hepatitis C.  However[,] the RIDOC failed to provide treatment consistent with said order."  Id. (internal citation omitted).  Plaintiff continues:

> However, despite Plaintiff's attempts to be treated, []including an in-person visit to RIDOC Medical Director[] Dr. Michael Fine, by Assistant Public Defender, Mrs. Janice Weisfeld, who alerted Director Fine of the existing court orders, it was not until April of 2011 that medical attention was initiated.  It should also be noted that urgent pain management is still unaddressed.  Moreover[,] medical staff has on other occasions, discontinued medications as prescribed by Plaintiff's outside doctors, (not to Plaintiff['']s benefit).

Id.

Other than stating that the RIDOC has failed to provide treatment for Plaintiff's Hepatitis C and mentioning Dr. Fine, see id., who is not a named defendant in this action, Plaintiff has not alleged what medical and/or dental treatment he sought, when he sought it, and who denied it.  He provides no factual allegations regarding his "attempts to be treated," other than the visit by Assistant Public Defender Weisfeld to Dr. Fine.  In addition, he provides no information regarding how he attempted to address "urgent pain management" or the result(s) thereof, except to say that it "remains unaddressed."  Nor does Plaintiff identify what medical staff, on what occasions, discontinued what medications.

With regard to Plaintiff's claim that "throughout his various confinement(s) at the ACI his legal mail has been met with interference, postage circumvention, and other unreasonable

delays/obstructions," First Amended Complaint ¶ 10, aside from noting one occasion during which Plaintiff alleges he informed his appointed counsel of the above infractions and was given a parcel of correspondence which was tampered with, see id., Plaintiff includes no information indicating who may have interfered with such mail, when such interference occurred, and who did the interfering. Even with reference to the one specific occasion to which Plaintiff refers, he provides no names (other than that of his attorney), dates, or other specifics regarding the alleged tampering.

As to the alleged confiscation of his medical alert bracelet, Plaintiff simply states that upon his transfer to Medium II Security his medical bracelet was confiscated and presumed destroyed. See id. ¶ 11. No further information regarding this incident is contained within the First Amended Complaint.

The Court finds that Plaintiff's First Amended Complaint fails to satisfy the requirements of Fed. R. Civ. P. 8(a). Accordingly, it should be dismissed on this basis. I so recommend.

Even if the First Amended Complaint satisfied Rule 8(a)'s requirements, there is no evidence that Plaintiff has exhausted his administrative remedies with regard to any of the alleged violations, thereby giving the RIDOC "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court," Woodford v. Ngo, 548 U.S. 81, 89, 126

S.Ct. 2378 (2006)(quoting <u>McCarthy v. Madigan</u>, 503 U.S. 140, 145
112 S.Ct. 1081 (1992)). Therefore, the First Amended Complaint is
subject to dismissal on this basis as well.

Congress enacted the Prison Litigation Reform Act of 1995
("PLRA"), 110 Stat. 1321-71, as amended, 42 U.S.C. § 1997e <u>et.</u>
<u>seq.,</u> in 1996 in the wake of a rise in prisoner litigation in the
federal courts. <u>Woodford</u>, 548 U.S. at 84; <u>see also</u> <u>Jones v. Bock</u>,
549 U.S. 199, 202, 127 S.Ct. 910 (2007)("In an effort to address
the large number of prisoner complaints filed in federal court,
Congress enacted the Prison Litigation Reform Act of 1995 (PLRA),
110 Stat. 1321-71, as amended, 42 U.S.C. 1997e <u>et seq.</u>"). "A
centerpiece of the PLRA's effort 'to reduce the quantity ... of
prisoner suits' is an 'invigorated' exhaustion provision, §
1997e(a)." <u>Woodford</u>, 548 U.S. at 84 (quoting <u>Porter v. Nussle</u>, 534
U.S. 516, 524, 122 S.Ct. 983 (2002))(alteration in original).

> The revised exhaustion provision, titled "Suits by
> prisoners," states: "No action shall be brought with
> respect to prison conditions under section 1983 of this
> title, or any other Federal law, by a prisoner confined
> in any jail, prison, or other correctional facility until
> such administrative remedies as are available are
> exhausted."

<u>Porter</u>, 534 U.S. at 524 (quoting 42 U.S.C. § 1997e(a)); <u>see also</u>
<u>Booth v. Churner</u>, 532 U.S. 731, 733-34, 121 S.Ct. 1819 (2001)("The
Prison Litigation Reform Act of 1995 amended 42 U.S.C. 1997e(a),
which now requires a prisoner to exhaust 'such administrative
remedies as are available' before suing over prison conditions.").

Exhaustion in cases covered by § 1997e(a) is mandatory and applies to all inmate suits about prison life, _Porter_, 534 U.S. at 524, 532; _see also_ _Jones v. Bock_, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."); _Woodford_, 548 U.S. at 85 ("exhaustion of available administrative remedies is required for any suit challenging prison conditions ..."); _Porter_, 534 U.S. at 520 (holding that "§ 1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences"), including those relating to "instances of medical mis- or non-treatment ...," _Acosta v. United States Marshals Serv._, 445 F.3d 509, 512 (1st Cir. 2006); _see also_ _Booth_, 532 U.S. at 734, 741 (requiring exhaustion where prisoner alleged denial of medical attention); _Knowles v. New Hampshire Dep't of Corrs., Comm'r_, 538 F.Supp.2d 453, 454, 456 (D.N.H. 2008)(granting summary judgment to defendants where prisoner failed to exhaust available administrative remedies in case where prisoner alleged inadequate medical treatment).

In _Woodford v. Ngo_, the Supreme Court held that "the PLRA exhaustion requirement requires proper exhaustion." 548 U.S. at 93. In other words, "the PLRA ... requires prisoners to exhaust prison grievance procedures before filing suit." _Jones v. Bock_, 549 U.S. at 202; _see also_ _Woodford_, 548 U.S. at 90-91 ("Proper exhaustion demands compliance with an agency's deadlines and other

16

critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."). Thus, "to properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' 548 U.S. at 88, 126 S.Ct. 2378—rules that are defined not by the PLRA, but by the prison grievance process itself." Jones v. Bock, 549 U.S. at 218 (quoting Woodford); see also id. ("Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' ... [I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."); Johnson v. Thyng, 369 Fed. Appx. 144, 147 (1st Cir. 2010)("To properly exhaust administrative remedies, a prisoner must complete the prison grievance procedures."); Acosta, 445 F.3d at 512 ("To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require."); Cable v. Wall, C.A. No. 09-439 ML, 2011 WL 1211600, at *2 (D.R.I. Mar. 8, 2011)("The PLRA requires 'proper exhaustion' of administrative remedies, which means the plaintiff must utilize all administrative remedies provided by an agency and must comply with the agency's deadlines and other procedural rules prior to filing a federal lawsuit relating to the conditions of his or her confinement."); Navarro v. Wall, No. C.A. 08-12ML, 2008 WL 4890756, at *2 (D.R.I. Nov. 12, 2008)(noting that "proper

exhaustion" means "the plaintiff must utilize all administrative remedies provided by an agency and must comply with the agency's deadlines and other procedural rules prior to filing a federal lawsuit relating to the conditions of his or her confinement").

The State argues that the RIDOC has an inmate Grievance Policy and Procedure, see State's Mem. re Motion to Dismiss at 5, that "[a] plain reading of LeBlanc's Amended Complaint clearly demonstrates that his factual allegation[s] as to conditions and violations are grievable," id. at 6, and that Plaintiff's "failure to avail himself of the process and exhaust his administrative remedies is dispositive of this civil action at this time," id. at 6-7. Plaintiff counters that there are complaints which precede the policy in question, Objection to Motion to Dismiss at 2,[4] and that any claims subsequent to December 3, 2007, "have in fact reached the highest level for redress within the prison system, (Office of the Director)," id. at 4. Therefore, "Plaintiff states

_____

[4] The State represents that the Inmate Grievance Policy and Procedure ("Grievance Policy") was promulgated on December 3, 2007, and has been in effect continuously since that time. Memorandum of Law in Support of Motion to Dismiss ("State's Mem. re Motion to Dismiss") at 2. Plaintiff has not denied this statement. Thus, if Plaintiff has claims which predate December 3, 2007, they are barred by the three-year statute of limitations, Rivera-Muriente v. Agosto-Alicea, 959 F.2d 349, 352 (1st Cir. 1992)("The Supreme Court directs federal courts adjudicating civil rights claims under 42 U.S.C. § 1983 to borrow the statute of limitations applicable to personal injury actions under the law of the forum state.")(quoting Street v. Vose, 936 F.2d 38, 39 (1st Cir. 1991)(per curiam)); Walden, III, Inc. v. Rhode Island, 576 F.2d 945, 946-47 (1st Cir. 1978)(affirming that Rhode Island's three year statute of limitations for personal injury actions applies to civil rights actions brought under 42 U.S.C. § 1983), as he filed his original Complaint on March 14, 2011, see Dkt.

18

that he has exhausted administrative remedies." Id. He concedes, however, that he has not **properly** exhausted administrative remedies. See Objection to Motion to Dismiss at 3 ("Admittedly, Plaintiff cannot prove technical compliance with DOC policy 13-10-1 [Grievance Policy] ....").

At the August 22, 2011, hearing Plaintiff alleged—for the first time—that he had not had access to the proper forms since at the ACI. See Electronic Recording of 8/22/11 Hearing.[5] Plaintiff cannot be held accountable for failure to exhaust if prison officials have rendered his administrative remedies unavailable to him. Perfetto v. New Hampshire State Prison, Warden, Civil No. 06-307-JL, 2008 WL 943372, at *6 (D.N.H. Apr. 8, 2008)(unpublished opinion).

> The PLRA is clear that proper exhaustion of administrative remedies is only of those remedies "as are available." 42 U.S.C. § 19[9]7e(a). The test for determining whether administrative remedies are available is objective and asks whether "a similarly situated individual of ordinary firm[n]ess [would] have deemed them available." Hemphill v. New York, 380 F.3d 680, 688 (2d Cir. 2004)(internal quotation marks omitted); see, e.g., Macias v. Zenk, 495 F.3d 37, 44-45 (2d Cir. 2007) (remedies may not be "available" to prisoner threatened by prison employee); Beltran v. O'Mara, 405 F.Supp.2d 140, 153 (D.N.H. 2005)(remedies potentially rendered

---

[5] This allegation prompted the Court to allow the State to file an affidavit in response. See Electronic Recording of 8/22/11 Hearing. In fact, the State submitted two such affidavits. See Affidavit of Sergio Desousarosa (Dkt. #22) ("Desousarosa Aff."); Affidavit of Matthew Kettle (Dkt. #23) ("Kettle Aff."). The Court need not rely on the Desousarosa Aff. or the Kettle Aff., however, in determining whether Plaintiff has properly exhausted his administrative remedies as discussed above and, therefore, the Motion to Dismiss need not be converted to one for summary judgment.

unavailable to inmate where prison made misleading statements regarding whether complaint is grievable).

Id. (third alteration in original).

Here, Plaintiff has offered nothing beyond his belated assertion that proper grievance forms were unavailable to him. See id. ("Other than Perfetto's bare assertions, there is nothing in the record to suggest that he was denied access to the ... forms or dissuaded to a degree that effectively made administrative remedies unavailable to him."); see also Maldonado, 568 F.3d at 266 (noting that court need not accept as true "naked assertion[s] devoid of further factual enhancement")(alteration in original)(internal quotation marks omitted). Plaintiff has not alleged that he was threatened or misled by prison officials. "As long as a prison administrative grievance system remains in force ..., [the prisoner] must exhaust." Knowles, 538 F.Supp.2d at 462 (quoting Ferrington v. Louisiana Dep't of Corrs., 315 F.3d 529, 532 (5ᵗʰ Cir. 2002)); cf. Perfetto, 2008 WL 943372, at *6 ("Even taking Perfetto at his word that the prison limited his access to the ... grievance forms to two or three times a week, the grievance procedure or remedy was nonetheless always 'available' to him in the sense that the means to take advantage of it were available to him frequently enough to comfortably meet all of its procedural requirements and deadlines."). Therefore, the Court finds that Plaintiff has failed to exhaust his administrative remedies. See Perfetto, 2008 WL 943372 at *3 ("This failure to fully and properly exhaust

20

administrative remedies is fatal to [prisoner's] request for judicial remedies.").

With respect to the relief requested by Plaintiff, namely that the State provide "certain parts of the record," First Amended Complaint ¶ 5, a request first made—and denied—in conjunction with a petition for writ of habeas corpus, see id., which has since been dismissed, see Dkt. in LeBlanc v. State of Rhode Island, et al., CA 10-489 ML, Plaintiff is not entitled to free transcripts. Plaintiff has not provided any specific facts to show that he has some meritorious claim to present via a petition pursuant to 28 U.S.C. § 2254, see United States v. Desouza, No. 93-1205, 1993 WL 299394, at *2 (1st Cir. Aug. 5, 1993)(unpublished table decision; text in Westlaw)(concluding district court acted properly in denying defendant's motion for free transcripts); id. at *1 ("Because [defendant], who is seeking collateral relief, has not even described in general terms what the nature of her claim is, let alone given any specific facts to show that she has some meritorious claim, it is clear that the district court acted properly in denying her request for a free transcript."); see also United States v. MacCollom, 426 U.S. 317, 325, 96 S.Ct. 2086 (1976) (holding that right to free transcript is not necessary concomitant of writ of habeas corpus and noting that "[t]he district court has the power to order a free transcript furnished if it finds that the 'suit ... is not frivolous and that the transcript is needed to

decide the issue presented ....'")(quoting 28 U.S.C. § 753(f))
(alterations in original); Burke v. Dark, No. CIV. A. 00-CV-5773,
2001 WL 238518, at *3 (E.D. Pa. Mar. 8, 2001)("There is no right to
a free transcript for collateral challenges to a state conviction
... absent a showing of need for the transcript through a court
order."), let alone how such transcripts are relevant to the
instant § 1983 action.

The same is true with regard to Plaintiff's request that the
Court order the RIDOC and/or Director Wall to provide him with
"clear and concise copies," First Amended Complaint ¶ 7, of
institutional infractions, appeals, answers, and transcripts of any
relevant hearings, id.; access to audiotapes of such hearings, id.;
medical records from 1995 to the present, id.; and his six-part
inmate folder, including institutional grievances, id. The only
portion of the request remotely related to the First Amended
Complaint is the request for medical records, and Plaintiff has
provided no information regarding how medical records spanning an
approximately sixteen-year period would assist him in prosecuting
his claim regarding inadequate medical treatment or that such claim
is meritorious.

Also relating to Plaintiff's allegations regarding inadequate
medical treatment, Plaintiff states that "some of his claims
involve non-compliance with orders of the Providence Superior Court
as to Plaintiff's medical care." Objection to Motion to Dismiss at

2.  However, it is not the function of this Court to enforce state court orders.  See Beaudoin v. Michigan Racing Inc., 30 Fed. Appx. 575, 576 (6th Cir. 2002)(noting that "the appropriate recourse available to [the plaintiff], for the alleged violations of the state court's order, was to advise the state court of the alleged violations and to pursue the matter in the [state] courts"); Bartlett v. Wells, No. EDCV 07-00546 SGL (JCRx), 2008 WL 4390151, at *3 (C.D. Cal. Aug. 29, 2008)(noting "impropriety of having a federal court enforce a state court's orders").

The State's final argument pertaining to the Motion to Dismiss is that because the State is not a "person" within the meaning of § 1983,[6] the Motion to Dismiss should be granted.  State's Mem. re Motion to Dismiss at 10.  The State further contends that "although the Amended Complaint is captioned Peter LeBlanc v. Ashbel T. Wall et al., nowhere in the Amended Complaint does Plaintiff make any specific allegation against Director A.T. Wall."  Id. at 9-10.

In Will v. Michigan Department of State Police, 491 U.S. 58,

---

[6] Section 1983 provides, in relevant part, that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

42 U.S.C. § 1983.

109 S.Ct. 2304 (1980), the Supreme Court addressed "the question whether a State, or an official of the State while acting in his or her official capacity, is a 'person' within the meaning of ... 42 U.S.C. § 1983." 491 U.S. at 60. The Court held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." Id. at 71; see also Jones v. Rhode Island, 724 F.Supp. 25, 28 (D.R.I. 1989)("Based on the Supreme Court's holding in Will, it is clear that neither the state of Rhode Island nor any of its officials acting in their official capacities, are 'persons' that can be held liable under § 1983."). The Will Court explained that:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

491 U.S. at 66 (internal citation omitted). Regarding state officials acting in their official capacities, the Supreme Court stated: "Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against

the State itself."[7]  Id. at 71 (internal citation omitted).  The
same is true for the RIDOC.  See Huard v. Essex Cnty. Corr. Ctr.,
No. CIV.A. 08-120S, 2009 WL 1886050, at *2 (D.N.H. May 21, 2009)
(unpublished opinion)(noting that had plaintiff included claims
against the Essex County Correction Center, "those claims would
fail since [it] is not a 'person' that can be the subject of an
action under that statute.").

As for Director Wall, "[a] supervisor cannnot be liable
strictly based on respondeat superior liability but instead may
only be found liable based on the supervisor's own actions or
omissions." Id. at *3 (internal citation omitted); see also Ramos
v. Patnaude, 640 F.3d 485, 488 (1st Cir. 2011)("*respondeat superior*
is not a channel of derivative liability in a § 1983 action");
Sanchez v. Pereira-Castillo, 590 F.3d 31, 49 (1st Cir. 2009)
("Although 'Government officials may not be held liable for the
unconstitutional conduct of their subordinates under a theory of
*respondeat superior*,' Iqbal, 129 S.Ct. at 1948, supervisory
officials may be liable on the basis of their own acts or
omissions."); Jones v. Rhode Island, 724 F.Supp. at 32 ("A § 1983
action cannot be based on a *respondeat superior* theory of

<hr />

[7] The Supreme Court further noted that "[o]f course a state official
in his or her official capacity, when sued for injunctive relief, would
be a person under § 1983 because official-capacity actions for
prospective relief are not treated as actions against the State." Will
v. Michigan Department of State Police, 491 U.S. 58, 71 n.10, 109 S.Ct.
2304 (1980)(internal quotation marks omitted).  However, as will be
discussed, see Discussion section III.C. infra at 28-30, Plaintiff has
not met the criteria for injunctive relief.

liability.")(citing <u>Polk Cnty. v. Dodson</u>, 454 U.S. 312, 325, 102 S.Ct. 445 (1981)).  "Supervisory liability can be grounded on either the supervisor's direct participation in the unconstitutional conduct, or through conduct that amounts to condonation or tacit authorization." <u>Whitfield v. Meléndez-Rivera</u>, 431 F.3d 1, 14 (1st Cir. 2005); <u>see also Sanchez</u>, 590 F.3d at 49 (noting that plaintiff in § 1983 action must show "an affirmative link, whether through direct participation or through conduct that amounts to condonation or tacit authorization between the actor and the underlying violation")(internal citation omitted).

There are three references to Director Wall in the First Amended Complaint: in the caption, <u>see</u> First Amended Complaint at 1; in a reference to Plaintiff's petition for writ of habeas corpus "in the matter of LeBlanc v. State of Rhode Island v. Ashbel T Wall et al CA No 10-489 ML," <u>id.</u> ¶ 1; and in the context of his request for "an order directing the RIDOC (ACI) Ashbel T. Wall et al, to produce clear and concise copies ...," <u>id.</u> ¶ 7, of certain documents, <u>see id.</u> There are no allegations against Director Wall, either in his official or in his individual capacity, in the First Amended Complaint.  Thus, to the extent that Plaintiff seeks to hold Director Wall liable under a theory of supervisory liability, such claim is not cognizable under § 1983; to the extent that Plaintiff seeks to hold Director Wall liable for the conduct of subordinates at the RIDOC, Plaintiff's claim fails because he has

not alleged that Director Wall participated in or condoned any actions by them; and to the extent that Plaintiff seeks to hold Director Wall liable individually, he has made no allegations against Director Wall.  See <u>Jones v. Rhode Island</u>, 724 F.Supp. at 27.

The Court finds that the First Amended Complaint fails to comply with Fed. R. Civ. P. 8(a) and that Plaintiff has failed to exhaust his administrative remedies.  The Court further finds that Plaintiff cannot sue the State, as it is not a "person" within the meaning of § 1983.  Nor can Plaintiff sue the RIDOC or Director Wall in his official capacity.  In addition, to the extent that Plaintiff purports to sue Director Wall in his individual capacity, Plaintiff has made no allegations against Director Wall individually.  Accordingly, Plaintiff has failed to state "a plausible entitlement to relief," <u>Iqbal</u>, 129 S.Ct. at 1950 (quoting <u>Twombly</u>, 550 U.S. at 559), and the Motion to Dismiss should be granted.  I so recommend.

**B.   Motion to Join**

Director Wall has moved to join and support the State's Motion to Dismiss.  <u>See</u> Motion to Join.  Plaintiff has not opposed the Motion to Join.  <u>See</u> Dkt.  It should, therefore, be granted on this basis, as well as on the bases enunciated above.  I so recommend.

**C.   Motion for Injunction**

In his Motion for Injunction, Plaintiff prays that the Court:

(1) order that Plaintiff be released from disciplinary confinement pending a full hearing before this Court; (2) order Director Wall to provide medical care to Plaintiff forthwith, including, but not limited to, torn right meniscus, lumbar concerns at L3-L4, hepatitis C, pain management, and eyeglasses; and (3) order the RIDOC to provide Plaintiff access to the law cart and legal materials, i.e., paper, envelopes, and stationary as needed. Motion for Injunction at 3. As noted previously, Plaintiff, as the moving party, must demonstrate by a clear showing: (1) that he has a substantial likelihood of success on the merits; (2) that he faces a significant risk of irreparable harm if the injunction is denied; (3) that the harm he will suffer outweighs any harm to defendants if the injunction is granted; and (4) that the granting of prompt injunctive relief will promote (or, at least, not denigrate) the public interest. <u>McGuire</u>, 260 F.3d at 42; <u>see also</u> <u>Mazurek</u>, 520 U.S. at 972. The most important of these factors is likelihood of success on the merits. <u>See</u> <u>Esso Standard Oil Co.</u> <u>(Puerto Rico) v. Monroig-Zayas</u>, 445 F.3d at 18.

Given the fact that the Court has recommended that the First Amended Complaint be dismissed, I find that Plaintiff has not shown a substantial likelihood of success on the merits. Accordingly, his Motion for Injunction should be denied for this reason. <u>See</u> <u>Penn v. San Juan Hosp., Inc.</u>, 528 F.2d 1181, 1185 (10th Cir. 1975) (noting that movant must establish his right to injunctive relief

"by clear proof that he will probably prevail when the merits are tried"); L.L. Bean, Inc. v. Bank of America, 630 F.Supp.2d 83, 89 (D. Me. 2009)("[M]andatory preliminary relief is subject to heightened scrutiny and should not be issued unless the facts and the law clearly favor the moving party.")(quoting Dahl v. HEM Pharmaceuticals Corp., 7 F.3d 1399, 1403 (9th Cir. 1993))(alteration in original); see also Snyder v. Millersville Univ., Civil Action No. 07-1660, 2008 WL 5093140, at *11 (E.D. Pa. Dec. 3, 2008) ("Mandatory injunctions, which require defendants to take some affirmative action, are 'looked upon disfavorably and are generally only granted in compelling circumstances,'")(quoting Florham Park Chevron, Inc. v. Chevron U.S.A., Inc., 680 F.Supp. 159, 166 (D.N.J. 1988)); Burgos v. Univ. of Central Florida Board of Trustees, 283 F.Supp.2d 1268, 1271 (M.D. Fla. 2003)("A mandatory preliminary injunction requiring defendant to take affirmative action is proper only in 'rare instances.'")(quoting Harris v. Wilters, 596 F.2d 678, 680 (5th Cir. 1979)).  Moreover, with the exception of Plaintiff's request that he be provided with medical care forthwith, the requests contained in the Motion for Injunction bear no resemblance to the claims presented in the First Amended Complaint.  See Devose v. Herrington, 42 F.3d 470, 471 (8th Cir. 1994)("[A] party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint.").

The Court finds that Plaintiff has not demonstrated a substantial likelihood of success on the merits. The Court additionally finds that the Motion for Injunction is, for the most part, unrelated to the allegations contained in the First Amended Complaint. Thus, the Motion for Injunction should be denied. I so recommend.

### D. Amended Motion for Injunction

In his Amended Motion for Injunction, Plaintiff requests that the Court include an unrelated matter in his Motion for Injunction. Amended Motion for Injunction at 5. Specifically, Plaintiff claims that "subsequent to an alledged [sic] disciplinary infraction imposed by Defendants Plaintiff was subjected to disciplinary confinement at the RIDOC Med 1 seggregation [sic] unit." Id. at 1. According to Plaintiff, he was not provided access to legal materials pursuant to applicable law and policy, see id. at 2, and "attempted to obtain his legal materials and trained law clerk assistance," id., but was, instead, booked for "falsifying information," id.

Plaintiff raised the issue of this booking during the August 22, 2011, hearing. See Electronic Recording of 8/22/11 Hearing. The Court elected not to pursue the matter as it appeared unrelated to the Motion to Dismiss or Motion for Injunction. See id. Thereafter, Plaintiff filed the instant Amended Motion for Injunction. See Dkt.

30

Having received the Amended Motion for Injunction, it is clear that it is completely unrelated to the allegations in the First Amended Complaint. See Devose, 42 F.3d at 471. I therefore recommend that it be denied.

## IV. Conclusion

For the reasons stated above, I recommend that the Motion to Dismiss be granted. I further recommend that the unopposed Motion to Join be granted. In addition, I recommend that the Motion for Injunction be denied and that the Amended Motion for Injunction also be denied.

Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


*/s/  David L. Martin*
DAVID L. MARTIN
United States Magistrate Judge
December 21, 2011